# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**PAUL MARKOWITZ,**

        **Plaintiff,**

v.                                                                                  Case 2:17-cv-02782-TLP-cgc

**DAVID YNGUANZO, in his official and individual capacities; JOHN DOES 1-12 and JANE DOES 1-12, as individuals in their official capacity of the City of Memphis; MEMPHIS POLICE DEPARTMENT; SHELBY COUNTY; SHELBY COUNTY JAIL; SHELBY COUNTY SHERIFF'S EMPLOYEES JOHN and JANE DOES 1-10; SHELBY COUNTY JAIL EMPLOYEES JOHN and JANE DOES 1-12; MEMPHIS FIRE DEPARTMENT EMS &/or OTHER PURPORTED "EMERGENCY ASSISTANTS JOHN and JANE DOES 1-8, in their official and individual capacities; THE ELVIS PRESLEY MEMORIAL TRAUMA CENTER (THE "MED"); THE "MED'S" EMPLOYEES JOHN and JANE DOES 1-8, in their official and individual capacities; KROGER FOOD STORE CORPORATION and/or "KROGER FOOD STORE," located at 3347 Crestview, South Highland, Memphis, Tennessee, 38111; EMPLOYEES of KROGER FOOD STORE CORPORATION and/or "KROGER FOOD STORE," JOHN and JANE DOES 1-10, including one known only by the name initials "AJ,"**

        **Defendant.**

## REPORT AND RECOMMENDATION ON *IN FORMA PAUPERIS* SCREENING PURSUANT TO 28 U.S.C. 1915 AND CERTIFICATION OF APPEALABILITY

Before the Court, pursuant to Administrative Order 2013-05[1], is Plaintiff Paul Markowitz's Complaint, which must be screened pursuant to 28 U.S.C. 1915 ("Section 1915") as he is proceeding *in forma pauperis*. The Section 1915 screening has been referred to the United States Magistrate Judge for Report and Recommendation. For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Complaint fails to state a claim upon which relief may be granted and should be DISMISSED pursuant to Section 1915. It is further RECOMMENDED that the District Court certify pursuant to Rule 24(a) that any appeal taken in this matter is not in good faith and may not be taken *in forma pauperis*.

## I. Introduction

Plaintiff's Complaint arises from events that occurred at a Kroger grocery store on or about October 21, 2016 and that eventually required a response from law enforcement. Plaintiff alleges that, at approximately 5:00 p.m. on that date, he was in the dining area of a Kroger store located at 3334 Raven, South Highland, Memphis, Tennessee. (Compl. at 3-4).[2] Plaintiff alleges that he was "quietly eating his purchased food" while working on his laptop computer on "Advanced Academic R&D" breast and prostate cancer research. (*Id*. at 4). Plaintiff alleges that he "noticed an abandoned backpack" located "2-3 tables in front of him" and that, out of concern, he went to turn it in to customer service. (*Id*.) Plaintiff states that, "[d]uring such endeavors," a "Hostile, violent Blatantly 'Racial' individual," who was a "Known and Violent 'Vagrant & Panhandler'" and "Racial Inciting antagonist," and who was known to this Kroger Store and its employees and

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

[2] Plaintiff lists different streets for the address of the Kroger location in the style and body of his Complaint. (*See* Compl. at 1 & 4).

permitted to frequent the premises, intentionally dumped a large cup of coffee on Plaintiff's laptop computer. (*Id*.) Plaintiff alleges that the spill "instantly" and "permanently" destroyed it and its "irreplaceable computer files," which he states are "of significant monetary value." (*Id*.)

Plaintiff alleges that he "instantly" attempted to "'blot-off'" as much coffee as possible and then proceeded to "Store Security" and "Customer Care" to request assistance salvaging his computer and "the numerous 'Federally Protected' Files and years of Arduous Bio-Medical R&D's authored and owned by Plaintiff," including Department of Defense privileged documents. (*Id*.) Plaintiff alleges that store management advised that their video systems were "operational" and "functional" and that they would seize and maintain the "numerous videos in the store" that captured the incident. (*Id*.) However, Plaintiff alleges that all of the Kroger staff refused to assist him in any other way, including in helping salvage his computer and his files. (*Id*. at 5). Plaintiff states that the Kroger staff also refused to contact police in an attempt to engage in evidence destruction and to escape prosecution; instead, Plaintiff alleges that the Kroger staff advised that he must contact the police himself. (*Id*.) Plaintiff states that "[s]uch outrageous[,] willful inaction also alleged the Assailant to eventually escape the premises and area." (*Id*.)

Plaintiff states that he attempted to contact the Memphis Police Department ("MPD") on his cellular phone but that, after approximately thirty minutes, the time on his cellular phone expired. (*Id*. at 6). Plaintiff states that he requested that store security do so, which they refused. (*Id*.) Plaintiff requested to speak to a store manager, who was summoned over a store loud speaker; however, Plaintiff states that the manager, named A.J., "slowly arrived about an hour later, with NO concern of the Assailant, nor incident and Plaintiff's damages and Injuries." (*Id*.) Plaintiff states that he was eventually able to contact MPD despite the store's lack of assistance. (*Id*.)

3

Plaintiff alleges that the Kroger store personnel also made no effort to assist Plaintiff in cleaning up the large spill of coffee, which remained several feet in diameter on the floor. (*Id*.) Plaintiff alleges that, as he continued to try to salvage his laptop computer and files, he slipped on the coffee, further injuring his seriously torn knee. (*Id*.) Plaintiff states that Kroger staff made no efforts to assist him even after his injury. (*Id*. at 6-7).

Plaintiff further alleges that, "[a]fter about an hour, a Markedly deranged M.P.D. 'Policeman' arrived outside," who would later be identified as Officer Ynguanzo. (*Id*. at 7) Plaintiff states that he cordially walked outside to greet Officer Ynguanzo and provide his report but that he immediately detected "both a 'Contorted Rage' expression on his face, as well as the presence of a very strong alcoholic beverage, from approximately two (2) feet away." (*Id*.) Plaintiff states that he agreed to a pat-down by Officer Ynguanzo despite his concerns, during which Officer Ynguanzo retrieved "a small, approximately 2 inch legal folding pocket knife." (*Id*. at 7-8). Plaintiff alleges that he was "[f]ully compliant" and made "NO objections" to his pocket-knife being taken. (*Id*. at 8). Plaintiff states that he also provided his identification. (*Id*.)

Plaintiff alleges that, as the pat down continued, Officer Ynguanzo "suddenly and without ANY GOOD CAUSE" violently grabbed Plaintiff's right arm and "began to hard-twist it into a Painful, unnatural, contorted and damaging manner," which "instantly caused damages and [i]njuries to Plaintiff's arm" and his knee. (*Id.*) Plaintiff states that Officer Ynguanzo did this even though it was "beyond evident to any reasonable person . . . that Plaintiff had a severe limp & leg/knee injury" (*Id*. at 7). Plaintiff states that Officer Ynguanzo then "hard punch[ed]" him in his testicles and that, when Plaintiff "took issue" with this assault, Officer Ynguanzo continued to "Raging with a Contorted, Violent Behavior, while Sadistically Grinning . . . ." (*Id*. at 9). Plaintiff

4

states that Officer Ynguanzo then sprayed a "Full can of Mace, at close range" into his eyes, face and mouth. (*Id*. at 9-11)  Plaintiff alleges Officer Ynguanzo never informed him why he was being assaulted and did not mention that he was being detained or arrested. (*Id*. at 8-9).  Plaintiff states that he did not resist arrest or detention and did not commit any disorderly conduct; instead, Plaintiff only responded with "very mild and minimal efforts to Rightfully protect" his eyes, face, throat, and body. (*Id*. at 8-11).  Plaintiff alleges that Officer Ynguanzo "violently pushed" him into his squad car with no explanation. (*Id*. at 10).  Plaintiff states that, when Officer Ynguanzo seized his computer, he treated it without ordinary care by "'banging it around' recklessly." (*Id*. at 14).  Plaintiff alleges that no law enforcement officers, including Officer Ynguanzo, made any attempt to obtain the Kroger store videos after his arrest and only "minimally investigat[ed]" the incident. (*Id*. at 14, 22).

Plaintiff alleges that an ambulance arrived approximately one hour after he requested medical attention. (*Id*. at 16).  Plaintiff states that he "was treated with the most callous and Medical deficient disregards," which he believes only worsened his life-threatening conditions. (*Id*. at 16-17).  Plaintiff alleges that the ambulance "personnel/attendees were actually in a state of deranged '[h]umored [a]musements.'" (*Id*. at 17).  Plaintiff states that he was provided a nasal tube but that it was ineffective. (*Id*.)  Plaintiff states that he requested an oxygen mask but that his requests were refused despite his "medically deficient" blood oxygen levels and pleas that he was unable to breathe. (*Id*. at 17-18).

Plaintiff states that he requested "numerous times" to be transported to The Med. (*Id*. at 18).  Plaintiff states that MPD and personnel at The Med instructed him to sign paperwork that he believed was to allow him to get medical treatment while, instead, it was paperwork to transfer

5

him to Shelby County jail, where he would not receive medical assistance. (*Id*. at 19-20). Plaintiff states that he did continue to request medical aid at the Shelby County jail but that these requests were denied. (*Id*. at 20).

Plaintiff alleges that Officer Ynguanzo's assault upon him cause "various severe 'Chemical Injuries," including "eye/corneal damages" and "'Chemical Pneumonia.'" (*Id*. at 10). Plaintiff alleges that Officer Ynguanzo broke his sternum and that the assault left him with "shards of bone" in surrounding tissues. (*Id*. at 11-12). Plaintiff alleges that he also suffered damage to his already injured knee, to his arm, and to his elbow, as well as additional injuries. (*Id*. at 12, 15).

Plaintiff states that Officer Ynguanzo also committed perjury in his police report by mentioning his pocket knife and attempting to portray him as "armed." (*Id*. at 12). He states that Officer Ynguanzo also was untruthful in stating that he entered the Kroger store to approach Plaintiff; instead, Plaintiff avers that Plaintiff exited the store to greet Officer Ynguanzo. (*Id*. at 7, 13).

Although Plaintiff has provided a detailed recitation of the alleged facts, it is less clear what legal claims Plaintiff seeks to pursue against which Defendants. Plaintiff does not enumerate any specific causes of action; instead, his entire Complaint consists of a recitation of the facts interspersed with statutes and legal terms of art. Plaintiff briefly mentions the Tennessee Government Tort Liability Act ("GTLA"), Tenn. Code Ann. 29-20-201, and Section 1983, 42 U.S.C. 1983 in his Complaint. Plaintiff also mentions failure to train, failure to supervise, failure to act, breach of duty, negligence, negligence per se, gross negligence, misrepresentation, deliberate indifference, the "special duty doctrine," and fraudulent concealment. Finally, the title

6

of Plaintiff's Complaint lists additional statutes and violations that are not contained anywhere in the body of Plaintiff's Complaint.

## II. Analysis

Pursuant to Section 1915, in proceedings *in forma pauperis*, notwithstanding any filing fee, or any portion thereof, that may have been paid, the Court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).  The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted).  District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004).  District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003).

  A. *John and Jane Does*

As a threshold matter, Plaintiff has named a total of seventy-two John Doe and Jane Doe defendants in the instant case. Service of process cannot be made on unnamed or fictitious parties. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Michigan Bell Telephone Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is RECOMMENDED that Plaintiff's Complaint against all John Does and Jane Does be DISMISSED.

### B. *Named Defendants*

Aside from the John Doe and Jane Doe Defendants, Plaintiff has named the following Defendants: Officer Ynguanzo of MPD in his individual and official capacities; MPD; Shelby County; Shelby County Jail; the "Elvis Presley Memorial Trauma Center" ("the Med"); Kroger Food Store Corporation ("Kroger Corporation"); and Kroger Food Store ("Kroger Store").

Governmental departments and institutions, such as Shelby County Jail, are not suable entities, *see Brandon Crider v. Shelby County*, No. 06-2535-JDB/DKV, 2007 WL 2471480, at n.1 (W.D. Tenn. Aug. 27, 2007); accordingly, it is RECOMMENDED that any claims against Shelby County Jail are duplicative of his claims against Shelby County and must be dismissed. Further, an official-capacity claim against Officer Ynguanzo "represent[s] only another way of pleading an action against an entity of which an officer is an agent"—here, MPD. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978). Thus, it is RECOMMENDED that any official-capacity claims against Officer Ynguanzo are duplicative of his claims against MPD and must be dismissed.

With respect to the remaining Defendants—Officer Ynguanzo in his official capacity, MPD, and Shelby County—Plaintiff has failed to comply with Rule 8(a) by not providing a short and plain statement of the claims he seeks to pursue. Although his Complaint contains much sound and fury, when it comes to setting forth his causes of action with sufficient clarity, Plaintiff has not done so. Plaintiff mentions the GTLA briefly, but the GTLA does not set forth causes of action, *see*, *Gordon v. City of Henderson*, 766 S.W.2d 784, 786 (Tenn. 1989); instead, it provides for when a municipality and its employees may be held liable and when they are immune from suit, *see* Tenn. Code Ann. §§ 29-20-201, 29-20-205, 29-20-310. Absent an alleged underlying cause of action, Plaintiff's references to the GTLA are insufficient to state a claim upon which relief may be granted. Likewise, Plaintiff mentions Section 1983; however, Section 1983 itself "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). Plaintiff does not set forth any rights of which he believes he has been deprived. Therefore, if this Court were to attempt to construe his underlying tort claim or claims or his Section 1983 claim, the Court would be required to act as Plaintiff's counsel and create his claims for him. This is not the proper role of the Court when performing a Section 1915 screening. Accordingly, it is RECOMMENDED that Plaintiff's Complaint fails to state a claim upon which relief may be granted against Officer Ynguanzo in his individual capacity, against MPD, or against Shelby County and that his Complaint should be DISMISSED against them pursuant to Section 1915.

### III. Certification of Appealability

The Court must additionally consider whether Plaintiff should be permitted to appeal the District Court's decision on his Section 1915 screening *in forma pauperis*, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal *in forma pauperis* must obtain pauper status under Rule 24(a). *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that, if a party has been permitted to proceed *in forma pauperis* in the district court, he may also proceed on appeal *in forma pauperis* without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies the pauper status, the party may file a motion to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* It would be inconsistent for the district court not to warrant service on the defendants but conclude that his Complaint has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983).

Here, the same considerations that lead to the recommendation that the District Court dismiss the Complaint in this case for failure to state a claim upon which relief may be granted also compel the recommendation that an appeal would not be taken in good faith. Accordingly, it is recommended that the District Court certify pursuant to Rule 24(a) of the Federal Rules of Civil Procedure that any appeal in this matter by Plaintiff is not taken in good faith and that leave to proceed *in forma pauperis* on appeal be denied. It is further recommended that, if Plaintiff files a

10

notice of appeal, he must pay the $455 appellate filing fee in full or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

## IV. Conclusion

For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Complaint be DISMISSED pursuant to Section 1915 against all Defendants for failure to state a claim upon which relief may be granted. It is further RECOMMENDED that the District Court certify pursuant to Rule 24(a) that any appeal taken in this matter is not in good faith and may not be taken *in forma pauperis*.

Signed this 5th day of February, 2019.

        s/ Charmiane G. Claxton
        CHARMIANE G. CLAXTON
        UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**